United States District Court
Southern District of Texas

**ENTERED**

June 01, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:15-CV-392 |
| | § | |
| JUAN DE JESUS SALAZAR; aka | § | |
| SALAZAR; dba POLLOS Y CARNES | § | |
| ASADAS MONTERREY RESTAURANT; | § | |
| dba POLLOS & CARNES ASADAS | § | |
| MONTERREY, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers the "Plaintiff's Request for Entry of Default,"[1] and the "Plaintiff's Motion for Final Default Judgment & Brief in Support,"[2] filed by J&J Sports Productions, Inc. ("Plaintiff") against Defendant Juan De Jesus Salazar; aka Juan Dejesus Salazar; dba Pollos y Carnes Asadas Monterrey Restaurant; dba Pollos & Carnes Asadas Monterrey ("Defendant"). After considering the motion and relevant authorities, the Court **ORDERS** the Clerk of the Court to make an entry of default against Defendant, and **GRANTS** default judgment in favor of Plaintiff.

### I. Background

On September 14, 2015, Plaintiff filed its original complaint in federal court pursuant to 47 U.S.C. §§ 553 and 605, alleging that Defendant unlawfully intercepted and broadcasted the closed-circuit telecasts of the September 15, 2012 *Julio Cesar Chavez, Jr. v. Sergio Martinez, WBC Middleweight Championship fight program, including undercard or preliminary bouts*

---

[1] Dkt. No. 12.
[2] Dkt. No. 13 ("Motion").

("the Event") at the commercial establishment located at 7720 FM 1015 North, Weslaco, TX 78596 ("the Establishment").[3] Thereafter, the case was transferred to this Court on September 15, 2015.[4] Although Defendant has been properly served in this case, Defendant has failed to make an appearance.[5] The Court now turns to the request for entry of default and the motion for default judgment.

## II.    Entry of Default

Plaintiff requests that the Court enter default for Defendant's failure to appear or otherwise respond.[6] The applicable procedure and nomenclature regarding Federal Rule of Civil Procedure 55(a) was set forth by the Fifth Circuit as follows:

> A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. An entry of default is what the clerk enters when the default is established by affidavit or otherwise. Fed. R. Civ. P. 55(a). After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment*.[7]

The threshold requirement for an entry of default is met here "because [Defendant] did not file an answer within the allowed time."[8] Under Federal Rule of Civil Procedure 12(a)(1)(A)(i), Defendant was required to answer within 21 days of service;[9] in this case by March 17, 2016. As a result of the continuing lack of response by Defendant, the Court finds that entry of default is warranted. The Court now turns to Plaintiff's motion for default judgment.

---

[3] *See* Dkt. No. 1 ("Complaint").
[4] Dkt. No. 4.
[5] Dkt. No. 11.
[6] Dkt. No. 12 at ¶¶ 4, 7.
[7] *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (emphasis in original).
[8] *Id.*
[9] FED. R. CIV. P. 12(a)(1)(A)(i) ("A defendant must serve an answer within 21 days after being served with the summons and complaint.").

### III.   Default Judgment

####    a.  Legal Standard

As noted earlier, default judgment is governed by Federal Rule of Civil Procedure 55. Generally, by his default, Defendant admits Plaintiff's well-pleaded allegations of fact and "is concluded on those facts by the judgment."[10]  "Unlike questions of actual damage[s], which must be prove[n] in a default situation, conduct on which liability is based may be taken as true as a consequence of the default."[11]  To be clear, *default* only establishes liability; Plaintiff must still prove the amount of damages.[12]  Although the Fifth Circuit often requires district courts to hold evidentiary hearings on the damages inquiry,[13] a district court may rely on detailed affidavits establishing the necessary facts, particularly when "the amount claimed is a liquidated sum or one capable of mathematical calculation."[14]

####    b.  Liability

As previously noted, Plaintiff originally sued Defendant for violations of the Federal Communications Act, 47 U.S.C. §§ 553 and 605.  However, the instant motion seeks default judgment pursuant to 47 U.S.C. § 605.[15] Section 605(a) of the Act provides:

> Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication *by wire or radio* shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . No person not being authorized by the sender shall intercept any *radio communication* and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by *radio* and use such communication (or any information therein contained) for his own benefit or

---

[10] *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir.2002) (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)).
[11] *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992).
[12] *See United States for Use of M–CO Const. v. Shipco General*, 814 F.2d 1011, 1014 (5th Cir.1987).
[13] *Frame*, 967 F.2d at 204.
[14] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (citations omitted).
[15] Motion at ¶ 6.

for the benefit of another not entitled thereto. No person having received any intercepted *radio communication* or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.[16]

Since the Act is a strict liability statute, "to prove a violation, the plaintiff need only show that the Event was shown in the defendant's establishment without the plaintiff's authorization."[17]   While a default should not be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover,"[18] by Defendant's default, the Court should accept the well pleaded allegations of facts in the complaint.[19] Here, by his default, Defendant has admitted the following well-pleaded allegations of fact:

> [Defendant] held the license/permit issued by the Texas Alcoholic Beverage Commission for the establishment known as Pollos y Carnes Asadas Monterrey Restaurant a/k/a Pollos & Carnes Asadas Monterrey located at 7720 FM 1015 North, Weslaco, TX 78596[.][20]

> [Defendant] owned and/or operated the Establishment[.][21]

> [Defendant] had a right and ability to supervise the activities of the Establishment[.][22]

> [Defendant] had an obvious and direct financial interest in the activities of the Establishment.[23]

> Plaintiff is the license company exclusively authorized to sub-license the closed-circuit telecast of [the Event].[24]

---

[16] 47 U.S.C. § 605(a) (1996) (emphases added).
[17] *Joe Hand Promotions, Inc. v. Lee*, No. CIV.A. H-11-2904, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012).
[18] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[19] *Id.*
[20] Complaint at at ¶ 2.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at ¶ 5.

Pursuant to its authority to sub-license the Event, Plaintiff marketed and distributed the closed-circuit rights granted to it. Plaintiff, through its agents, contracted with various establishments throughout Texas and granted such establishments the right to broadcast the Event in exchange for a fee.[25]

The transmission of the Event originated via satellite and was electronically coded or "scrambled." In order for the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment.[26]

Defendant was not authorized to intercept, receive or transmit the communication of the Event or to assist in such actions in any form or at any time.[27]

On September 15, 2012, either by satellite transmission or through unauthorized receipt over a cable system, Defendant willfully intercepted and/or received the interstate communication of the Event. . . . Defendant then transmitted, divulged and published said communication, or assisted in transmitting, divulging and publishing said communication, to patrons within the Establishment.[28]

Defendant misappropriated Plaintiff's licensed exhibition of the Event and infringed upon Plaintiff's exclusive rights while avoiding proper payment to Plaintiff. Defendant's actions were committed willfully and with the express purpose and intent to secure a commercial advantage and private financial gain.[29]

These admissions establish that Defendant received and broadcasted the Event without Plaintiff's permission via satellite transmission. Additionally, Plaintiff has proffered two affidavits, a copy of the closed-circuit television license agreement, and a copy of the rate card for the Event in support of these claims.[30] District courts in the Fifth Circuit have "awarded default judgments in favor of the plaintiff," in circumstances such as this, "where, because of the defendant's failure to respond, a plaintiff has been unable to determine the method through which the defendant accessed the unauthorized communication."[31] Thus, the Court finds that Defendant's violation of Section 605 has been established as a matter of law.

---

[25] *Id*. at ¶ 7.

[26] *Id*. at ¶ 8.

[27] *Id*. at ¶ 15.

[28] *Id*. at ¶ 11.

[29] *Id*. at ¶ 12.

[30] *See* Dkt. No. 13, Exh. A.

[31] *J & J Sports Productions, Inc. v. Tiger Paw Daiquiris & Grill, LLC*, CIV.A. 14-268-BAJ, 2015 WL 1800619, at *4 (M.D. La. Apr. 16, 2015) (citing *J & J Sports Prods ., Inc v. Wine Bistro LLC,* No: 13–6369, slip op. at 8–9

### c. Damages

Having found Defendant liable under Section 605, the Court will in turn determine the damages to which Plaintiff is entitled. Pursuant to 47 U.S.C. § 605(e)(3)(C)(i), an aggrieved party may elect to recover either actual or statutory damages.  Thus, Plaintiff may recover an award of statutory damages "not less than $1,000 or more than $10,000, *as the court considers just* . . . ."[32]  In its motion for default judgment, Plaintiff seeks statutory damages in the amount of $10,000 for Defendant's violation of the Communications Act.[33]

In support of its request for $10,000 in statutory damages, Plaintiff contends that the lost income "from the sale of the Event . . . represents only a starting place for the determination of the amount of damages[.]"[34]  Plaintiff argues that it should receive additional compensation for the deprivation of the "value, benefits and profits derived from the unauthorized broadcast of the Event . . . as well as the value of business investment, business opportunities and goodwill."[35]  Indeed, courts have recognized that requiring defendants to only pay the price of the licensing fee *ex post facto* does not deter future violations, one of the objectives of the statute.[36]  In fact, capping damages at the cost of licensing fees can potentially *encourage* commercial

---

(E.D.La. July 30, 2014)); *J&J Sports Productions, Inc. v. KCK Holdings, LLC*, CIV.A. 14-00269-BAJ, 2015 WL 4656714, at *4 (M.D. La. Aug. 5, 2015) ("the Court will allow J & J to establish liability under either § 553 or § 605 without expressly showing which statute has been violated.") (citation omitted). *See also J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 674 (D.S.C. 2011) (accepting report and recommendation that awarded damages in a default judgment under Section 605 where defendants did not respond and where plaintiff's complaint noted impossibility of determining whether program was broadcast by satellite or cable in absence of discovery or admission by defendants).

[32] 47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added).
[33] Motion at ¶ 8.
[34] *Id*. at ¶ 10.
[35] *Id*. at p. 11 (internal quotation marks and citation omitted).
[36] *Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d at 776 (citing *Entm't by J&J Inc. v. Nina's Rest. & Catering*, No. 01 CIV. 5483 KMW RLE, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002)).

establishments to violate the law, since liability will never exceed what is paid in the open market.[37]

With this in mind, the Court notes that two different methods have been developed by courts to determine statutory damages under Section 605.  "One approach is to base the award of damages on the number of patrons in the establishment at the time of the violation. . . . Another method is to award a flat sum for damages."[38]  The award-per-patron metric seeks to estimate the overall profits derived from the violation; thus, it is without doubt easier to assess, one capable of mathematical calculation through affidavit testimony of the sort permitted in this circuit.  In contrast, a flat sum compensating for broader economic costs cannot be easily calculated.  Courts that have adopted the lump-sum approach have heavily relied on the inability to fully compensate the plaintiff and deter future violations through the award-per-patron approach, as well as the willfulness of the violation.[39]  Here, Plaintiff requests that the Court award a flat sum of $10,000.

The sublicense fee for the Event was based on the capacity of the contracting establishment.[40]  For example, commercial establishments with room capacity of up to 100 patrons were required to pay $1,600 to Plaintiff.[41]  In contrast, establishments with seating capacity of up to 500 patrons paid a fee of $4,200.[42]  However, Plaintiff does not brief the Court on the maximum capacity of the Establishment at issue or the cost of the sublicense fee applicable to this particular Defendant.

---

[37] *See Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983).
[38] *Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d at 776 (collecting cases).
[39] *See Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001); *Cablevision Sys. New York City Corp. v. Faschitti*, No. 94 CIV. 6830 (DC), 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996).
[40] Dkt. No. 13, Exh. A at p. 26.
[41] *Id.*
[42] *Id.*

In similar circumstances, courts have awarded a flat sum of statutory damages.[43] Statutory damages should be calculated to be "generous enough to ensure that the plaintiff is fully compensated" but "maximum statutory damages should be reserved for cases where there is evidence of more substantial injury to the plaintiff or profit by the defendants."[44] The Court finds that an award of $3,000 is appropriate given the evidence that there were approximately forty people inside the Establishment at the time Defendant broadcasted the Event.[45]  This figure is in excess of the licensing fee for an establishment of up to 300 people, and is likely greater than an award-per-patron calculation but warranted here given Defendant's behavior.

In addition to statutory penalties, Plaintiff seeks $50,000 (or five times the amount of requested statutory damages) for Defendant's willful conduct.[46] Pursuant to Section 605(e)(3)(C)(ii), the Court may, in its discretion, increase the award of damages by no more than $100,000 if it finds the Defendant violated the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain."  Thus, under the plain language of the statute, "[t]he determination as to the total amount of damages awarded . . . is within the discretion of the [C]ourt."[47]

The Court has little difficulty finding Defendant's violation was willful and for purposes of financial gain.  First, by default, Defendant admitted Plaintiff's allegation that the interceptions and transmissions of the Event was willful and with the express intent to secure a commercial advantage and private financial gain.[48] Additionally, it is clear to the Court that Defendant's wrongful conduct was willful from the nature of the transmission; as Plaintiff notes

---

[43] *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001); *King Vision Pay-Per-View Corp. v. Papacito Lidia Luncheonette, Inc.*, No. 01 CIV 7575 LAK AJP, 2001 WL 1558269, at *3 (S.D.N.Y. Dec. 6, 2001).
[44] *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001).
[45] Dkt. No. 13, Exh. A at p. 21.
[46] Motion at ¶ 21.
[47] *Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d at 776.
[48] Complaint at ¶ 12.

in its motion, Defendant could not have obtained the transmission of the Event had he not used an unauthorized decoder or satellite access card, illegally altered the cable or satellite service, and/or moved the authorized decoder or satellite card from its authorized location to the establishment.[49] Moreover, there is evidence that Defendant broadcasted the Event on three televisions and one projection screen.[50] Finally, Defendant's failure to appear in this action further illustrates his indifference toward the law.

Having found Defendant's conduct was willful and for purposes of direct or indirect commercial advantage or private financial gain, the Court finds that additional damages are necessary to send a message that illegal piracy is neither acceptable nor profitable. Therefore, the Court finds that additional damages of $5,000 under section 605(e)(3)(C)(ii) is reasonable and awards the same to Plaintiff.

### d.  Costs and Attorney's Fees

Plaintiff also seeks costs and attorney's fees.  Under Section 605(e)(3)(B)(iii), the Court "*shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."[51]  To determine the proper award of attorney's fees, the Court will calculate the *Lodestar* fee: the result of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly billing rate.[52]  The Court will then consider the *Lodestar* fee in light of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), and may, in its discretion, revise the *Lodestar* amount accordingly.[53]

---

[49] Motion at ¶ 5.
[50] Dkt. No. 13, Exh. A at p. 21.
[51] 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added).
[52] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).
[53] *Id.*

In support thereof, David Diaz, counsel for Plaintiff, attached an affidavit indicating that Plaintiff's attorneys "reasonably expended or will expend a minimum of four (4) hours on this litigation through the preparation of Plaintiff's Motion for Default Judgment."[54] Furthermore, Mr. Diaz contends a blended rate of $250 per hour is reasonable in light of his firm's experience with anti-piracy cases, and as supporting evidence, directs the Court to refer to opinions of our sister courts.[55] The Court agrees that $250 is a reasonable hourly rate in this case and finds that Plaintiff has properly established its attorneys have expended four hours in bringing this case to its current stage.  Because the Court has already incorporated the *Johnson* factors pertinent to this analysis in its calculation, it finds the *Lodestar* amount does not need to be altered. Therefore, the Court finds that $1,000 in attorney's fees is reasonable and awards the same to Plaintiff.  Additionally, the Court awards court costs to Plaintiff.

Plaintiff also seeks attorney's fees conditioned on potential post-trial services and appellate litigation.[56]  The Court approves as reasonable these conditional attorney's fees as follows:

- $5,000 in the event Defendant files a motion to vacate, Rule 60 motion, motion for new trial, motion for reconsideration or other post-judgment, pre-appeal motion that does not result in a reversal of the Judgment obtained in this action;

- $15,000 in the event Defendant files an appeal to the Fifth Circuit Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

- $5,000.00 in the event Defendant files a motion for rehearing or reconsideration in the Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

---

[54] Dkt. No. 13, Exh. A at p. 31.
[55] *Id*. at p. 32.
[56] *Id*. at p. 34.

- $5,000 for making and/or responding to a petition for writ of certiorari to the United States Supreme Court that does not result in a reversal of the Judgment obtained in this action;

- $10,000 for an appeal to the United States Supreme Court in the event a writ of certiorari is granted and does not result in a reversal of the Judgment obtained in this action.

- $2,500 for collection of the judgment rendered in this case, should Plaintiff obtain a writ of execution, writ of garnishment, writ of attachment or other process.

   e.   *Injunctive Relief*

Lastly, Plaintiff seeks a permanent injunction that "enjoins Defendant from ever intercepting or exhibiting an authorized program in violation of the Federal Communications Act."[57]  The Court sees no benefit to issuing a broad injunction that merely requires Defendant to comply with the law.  Therefore, the Court will not enter an injunction.

## IV.   Holding

For the foregoing reasons, the Court **ORDERS** the Clerk of the Court to make an entry of default against Defendant Juan De Jesus Salazar; aka Juan Dejesus Salazar; dba Pollos y Carnes Asadas Monterrey Restaurant; dba Pollos & Carnes Asadas Monterrey, and **GRANTS** judgment in favor of Plaintiff J&J Sports Productions, Inc. against Defendant Juan De Jesus Salazar; aka Juan Dejesus Salazar; dba Pollos y Carnes Asadas Monterrey Restaurant; dba Pollos & Carnes Asadas Monterrey. Judgment is hereby entered in the amount of $9,000, plus costs of court, with

---

[57] Motion at ¶ 23.

the additional fees awarded as conditioned herein.  Additionally, post-judgment interest shall accrue at the rate of 0.62%.[58]  This is a final judgment.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 1st day of June, 2016.

Micaela Alvarez
United States District Judge

---

[58] *See* 28 U.S.C. § 1961(a) (2000) (Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."); *Post-Judgment Interest Rates*, U.S. DISTRICT & BANKRUPTCY COURTS, SOUTHERN DISTRICT OF TEXAS, http://www.txs.uscourts.gov/page/post-judgment-interest-rates-2016 (last visited May 25, 2016).